**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **CONTINENTAL SERVICE GROUP, INC.,** ) <br> **and PIONEER CREDIT RECOVERY, INC.** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> **Defendant,** ) <br> ) <br> **and** ) <br> ) <br> ) <br> **CBE GROUP, INC.; FINANCIAL** ) <br> **MANAGEMENT SYSTEMS, INC.;** ) <br> **GC SERVICES LIMITED PARTNERSHIP;** ) <br> **PREMIERE CREDIT OF NORTH** ) <br> **AMERICA, LLC; VALUE RECOVERY** ) <br> **HOLDINGS, LLC; and** ) <br> **WINDHAM PROFESSIONALS, INC.** ) <br> ) <br> **Defendant-Intervenors** ) <br> ) | | No.   1:17-cv-0449 <br> (Chief Judge Braden) |

## MOTION TO INTERVENE

Progressive Financial Services, Inc. ("Progressive") by undersigned counsel, hereby files this motion to intervene in the above-captioned proceeding pursuant to Rule 24 of the Rules of the United States Court of Federal Claims ("RCFC"). Counsel for Progressive has spoken with counsel for Defendant United States, who represents that the Government does not oppose Progressive's motion, and counsel for Pioneer Credit Recovery, Inc., who opposes Progressive's motion, but has not received any response from counsel for Continental Service Group, Inc.

Progressive is entitled to intervene in this action as a matter of right under RCFC 24(a), which provides that an entity may intervene when such entity "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." RCFC 24(a)(2).  In the alternative, Progressive is entitled to intervene under RCFC 24(b) because it "has a claim or defense that shares with the main action a common question of law or fact."  RCFC 24(b)(1)(B).

## BACKGROUND

The Department of Education, Office of Federal Student Aid ("FSA") is responsible for administering the student financial assistance programs authorized under Title IV of the Higher Education Act of 1965, as amended.  When a student loan borrower is unable or otherwise fails to make payments on a student loan, ED identifies the loan as a defaulted loan.  Since 1981, the Department has contracted for the services of private collection agencies ("PCAs"), like Progressive, to perform collection and administration resolution activities on defaulted loans.

Progressive's Task Order No. ED-FSA-09-O-0017 ("Task Order") is one of 17 identical PCA contracts for student loan debt collection competitively awarded by ED in 2009 on an "unrestricted" basis.  Each PCA contract has identical terms and conditions.  Each contract included a base period of performance followed by option periods available at the government's discretion.  Through the exercise of all available option periods, ED could unilaterally extend the contracts through April 21, 2015.  Progressive's contract was extended through this date.  Following the conclusion of all option periods, the contracts provided that ED could award new bridge contracts to the top-performing PCAs that would last until ED could conduct a full and open competition for the next set of PCAs.  These bridge contracts were referred to in the original contracts as "award term extensions."

**The Award-Term Extensions**

On or about February 23, 2015, ED issued a notice of intent to issue a two-year award-term extension based on section H.1 and/or H.4 of the Contract to five PCAs: Account Control Technology, Inc. ("ACT"); Continental Service Group, Inc. ("ConServe"); Financial Management Systems, Inc. ("FMS"); GC Services Limited Partnership ("GC Services"); and Windham Professionals, Inc. ("Windham"). Progressive did not receive a notice or letter of intent to extend its term. The Agency's actions in this regard have been the subject of ongoing litigation since March 2, 2015.[1] *See Coast Prof'l, Inc., et al. v. United States*, No. 1:15-cv-00207 (consolidated case).

**The Solicitation**

The Solicitation was issued for full and open competition on December 11, 2015 using Part 15 competitive procedures, and contemplated issuing multiple Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts and Task Orders for debt collection services, with a Base Ordering Period of five years, with a single, five-year Optional Ordering Period. Progressive timely submitted its revised proposal in response to the Solicitation on February 29, 2016.

However, on December 9, 2016, Progressive received notice that it had not received award. After receiving a written debriefing, Progressive filed a protest, as did 23 other offerors. Finding that Progressive and others were materially prejudiced by the Agency's arbitrary and capricious evaluation, which was an abuse of discretion and which violated procurement laws and regulations, and calling into question the award decisions, GAO sustained the protest on

---

[1] It is Progressive's understanding that the Agency has taken corrective action in connection with the award term extensions, and intends to re-evaluate the awardees, and that any award term extension contract(s) awarded through the Agency's re-evaluation will end when performance begins under the separate contracts that the Agency is currently attempting to procure under the Solicitation. On that basis, the matter is stayed pending the Agency's decision.

March 27, 2017. *Gen. Revenue Corp.,* B-414220.2 *et al.* (Comp. Gen. Mar. 27, 2017). The GAO recommended that the Agency perform a new evaluation and "[i]n the event that any of the current awardees are not evaluated as having a proposal among the most advantageous to the government, the agency should terminate any such awards for the government's convenience." *Id.*

**Expiration of the Current Contract**

Because Progressive did not receive an award term extension, Progressive was allowed to retain in-repayment accounts for an additional 24 months past the expiration of the period of performance under Section 3.4 of the Task Order.

However, Section 4.4(B) of the Task Order, titled TASK ORDER PHASE OUT AND CLOSE OUT OF ACCOUNTS, states: "ED will conduct an orderly recall of all retained in-repayment accounts upon the effective date of expiration of the Task Order <u>unless the Contractor has been awarded a subsequent ED Collections Task Order or contract</u>." (emphasis added). Compl., Ex. 4, Task Order, Scope of Work at 20. The effective date of expiration of accounts under the task order was April 22, 2017.

**This Court Enjoins The Agency**

Progressive timely filed it protest at the GAO in time to trigger a mandatory CICA stay. However, as detailed in public filings in this matter, other protestors alleged that ED was undermining the automatic stay during the pendency of the GAO protests by assigning accounts to other contractors under other contract vehicles. On March 29, 2017, two days after the GAO released its decision sustaining Progressive's protest, this Court issued a Memorandum Opinion And Temporary Restraining Order ("TRO"), to prohibit, pursuant to RCFC 65(d), ED from:

> (1) authorizing the purported awardees to perform on the contract award under Solicitation No. ED-FSA-16-R-0009 for a period of fourteen days, *i.e.* until

>April 12, 2017; and
>(2) transferring work to be performed under the contract at issue in this case to other contracting vehicles to circumvent or moot this bid protest for a period of fourteen days, *i.e.* until April 12, 2017.

(Dkt. No. 9 at 3.) On April 10, 2017, the court extended the March 29, 2017 TRO until April 24, 2017. (Dkt. No. 56 at 2.)

**Recall/Transfer of Accounts**

To date, ED has not yet determined and/or announced how it plans to take corrective action. Yet, on April 18, 2017 ED filed a Notice in this matter explaining that "ED will be recalling defaulted student loan accounts from these 13 PCAs whose task orders were expire on Friday, April 21, 2017", and that "accounts that will be recalled from the expired contracts will continue to be maintained by Maximus Federal Services, Inc. (MFS), the contractor who manages the agency's Debt Management and Collections System (DMCS) and who services the agency's portfolio of defaulted student loans when not assigned to a PCA." (Dkt. No. 65 at 1-2.) As detailed in ED's Notice filed in this Court, however, ED does not intend to recall accounts from those contractors who received award-term extensions in 2015.

After ED's Notice, on April 19, 2017, the court issued an Order notifying the parties that it will extend the TRO on April 24, 2017 until May 8, 2017, and on May 8, 2017, it will extend the TRO until May 22, 2017. (Dkt. No. 67 at 2). Citing ED's Notice and the existing TRO, Progressive filed its Complaint seeking to prevent recall of its accounts after the GAO sustained its protest. (*Progressive Financial Services, Inc.,* No. 17-558, Dkt. No. 1.) CBE, Premiere, and Transworld filed a similar "Joint Emergency Motion to Enforce Restraining Order" in this matter, which explained that ED's announced intent to transfer the in-repayment accounts to Maximus was in direct contravention of the direction in the Court's TRO that ED not "transfer[]

work to be performed under the contract at issue in this case to other contracting vehicles." (Dkt. #68.)

On April 24, 2017, at a hearing before the Court on Progressive's Motion and on CBE, Premiere and Transworld's Motion, ED informed the Court that it did not know when it would recall accounts, but that it had no imminent plans of doing so. After the hearing (which Progressive attended), the TRO was amended again to allow three of the awardees, CBE, Premiere, and Transworld, to retain their in repayment accounts and continue to service them under their new contracts for a period of 60 days. (Dkt. No 73 at 2.) The Court explained that this modification was intended "to preserve the status quo to protect the interest of all parties and to afford the Government an opportunity to reach a global solution of the aforementioned cases." (*Id.* at 3.) Later that evening, the Court directed all parties—in this action, as well as in the other filed protests, including Progressive's—to appear for a hearing on May 2, 2017 to argue the merits of their respective Motions for Preliminary Injunction. *See* Email from R. Gallardo-Hevia to Parties, Apr. 24, 2017. However, one day later, on April 25, 2017, ED informed the Court that it did not intend to recall accounts from Progressive because of Progressive's pending litigation. Email from L. Moore to R. Gallardo-Hevia and Parties, Apr. 25, 2017. On April 28, 2017, ED informed Progressive that it would not recall accounts from Progressive during the pendency of the *Continental Services, Inc.* matter, but that it would not be issuing a bridge contract. Email from A. Echols to T. Coulter and A. Vohra, Apr. 28, 2017. However, later that afternoon, ED revised its position, and stated that it would not recall accounts from Progressive "*for the duration of the existing TRO in the Continental case*" and that it would oppose Progressive's Motion for a Preliminary Injunction. Email from A. Echols to T. Coulter and A. Vohra, Apr. 28, 2017.

Currently, Progressive is now left with retained accounts, but no ability to service them, while three awardees whose awards were called into question, CBE, Premiere, and Transworld, are allowed to service their in-repayment accounts. And, ED continues to delay its corrective action, with no timeline for completion of that corrective action. Moreover, Progressive is now in the difficult position of trying to argue the merits of its protest without the benefit of knowing whether the agency's, other protestors', and defendant-intervenors' positions on various subjects are consistent or even reasonable because the DOJ objects to the consolidation of all protests, yet Progressive continues to be affected by the rulings entered *in this matter*, without having any opportunity to argue in favor or against. Therefore, Progressive, as an offeror whose protest was sustained at GAO and who stands a very real chance of being awarded a contract after proposals are re-evaluated, and whose interests are affected by, and seemingly reliant on, the rulings and positions taken in this matter, seeks to intervene in this matter so that it can protect its interest in its retained accounts and limit any diminution of its future award, and so it is not treated unfairly merely because it is not part of the larger protest matter.

## ARGUMENT

**I.     Progressive Is Entitled To Intervene As A Matter Of Right**

The United States Court of Appeals for the Federal Circuit has set forth a four-part test to intervene as of right under RCFC(a)(2): (1) the motion must be timely; (2) the movant must claim an interest in the property affected by the case; (3) the interest claimed must be "'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation an effect of the judgment'"; and (4) the movant must demonstrate that the claimed interest is not adequately represented by the current parties. *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (quotation omitted).

"[T]he requirements for intervention are to be construed in favor of intervention[.]" *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989).

Progressive is entitled to intervene as of right because (i) this Motion is timely in light of recent events; (ii) Progressive has a legally-protectable interest in the outcome of the case because the GAO sustained its protest concerning the procurement that is the subject of the instant action and because it currently holds "in-repayment" accounts that may be recalled and transferred in violation of the existing TRO in this case; (iii) this litigation will directly impair or impede Progressive's interests in its in-repayment accounts without its participation in the instant action; and (iv) Progressive's interests will not be adequately represented by the existing parties.

First, Progressive timely applies for intervention. The determination of whether a motion to intervene is timely is informed by the following three factors: (1) the length of time during which the applicants actually knew or reasonably should have known of their rights; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the applicants by denying intervention; and (3) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Northeast Military Sales, Inc. v. United States (Northeast Military Sales),* 100 Fed. Cl. 100, 100-102 (2011) (citing *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States (Chippewa Cree)*), 85 Fed. Cl. 646, 658 (2009). "Timeliness 'is to be determined by the court in the exercise of its sound discretion'" must be "considered in the context of the proceeds," and is "'to be determined from all the circumstances.'" *Id.* at 101 (citations omitted).

Progressive promptly files this Motion to intervene only 10 days after the agency filed its Notice regarding the retained accounts, less than one week after the Court entered its most recent TRO allowing CBE, Premiere and Transworld to retain and continue to service their retained

accounts for a period of 60 days, and only one month after Continental Service Group, Inc. ("ConServ") filed its Complaint. Permitting the intervention of Progressive would not cause prejudice to any party, and the intervention of Progressive will not affect the briefing schedule for any Motions for Judgment on the Administrative Record ("MJAR"), as such briefing has not begun. (Dkt. No. 22.) Moreover, the hearing schedule set by the Court on April 24, 2017 in anticipation of the May 2, 2017 hearing on preliminary injunctions also included Progressive, even though Progressive's case has not been consolidated with the above-captioned matter.. *See generally Progressive Indus., Inc. v. United States,* No. 14-1225C, 2015 WL 1810495, at *4 (Fed. Cl. Apr. 17, 2015) (holding that intervention as a matter of right two months post-filing, but prior to beginning of briefing or scheduling of oral argument, was appropriate). Accordingly, Progressive's Motion to Intervene is timely.

Second, Progressive has a legally-protectable interest that is directly impacted by this bid protest action. Progressive is an incumbent PCA contract holder and, but for ED's ongoing delay and multiple errors in the administration of the underlying procurement, likely would have been awarded one of the new PCA contracts under the Solicitation at issue. Further, Progressive has a significant interest in the relief sought by Plaintiffs during pendency of this litigation, including maintaining the status quo, preventing ED from diminishing the value of its future award, and continuing to retain *and service* in-repayment accounts that began on its prior PCA contract, which should have continued under a properly awarded 2016 contract, and which could be affecting by the rulings issued in this matter. Moreover, Progressive has an interest in being treated fairly and equally to the Defendant-Intervenors in this matter, especially if a subset of the Intervenor-Defendants and awardees of the improper 2016 awards are allowed to service their in-repayment accounts based on their invalid contracts.

Third, Progressive's interest in this matter is direct and immediate, and Progressive's rights will be affected by the direct legal operation of the rulings in this matter. There is a very real danger that Progressive's interest in the in-repayment accounts will be affected by the arguments and resulting Orders issued by the Court in this matter. Indeed, even if ED were to agree that Progressive could service its in-repayment accounts, it would need to ask the Court's permission to do so under the existing language of the TRO issued in this case. Moreover, if the Defendant-Intervenors are allowed to perform under their current awards based on the TRO in this case, and are allowed to service their in-repayment accounts while Progressive is not, this amounts to continued disparate treatment for Progressive, who has already illustrated prejudice and unequal treatment when its GAO protest was sustained. Without intervention, Progressive cannot effect changes to the current TRO or any subsequent injunction to prevent harm to its interests.

Finally, intervention is proper here because Progressive's interests are not adequately protected by the protestors or any other party, as evidenced by the carve-out from the TRO, allowing the Intervenor-Defendants to service their in-repayment accounts, while Progressive is not afforded the same opportunity.

## II.     Alternatively, Progressive Should Be Permitted to Intervene

In the alternative, Progressive should be permitted to intervene under RCFC 24(b) because it "has a claim or defense that shares with the main action a common question of law or fact." RCFC 24(b). At the core of permissive intervention is the notion that a common question of law or fact would aid the litigation by allowing all of the parties with a common set of positions to contribute to that litigation. Allowing Progressive to intervene provides the Court with all facts and arguments that may impact the pending litigation, and allows Progressive, who

shares a common set of positions as the protestors (and potentially, with some of the Defendant-Intervenors), a chance to contribute to the litigation.  Further, as set forth above, allowing Progressive to keep its in-repayment accounts will, per the Court's stated intent in its modified TRO, ensure that the Court may "preserve the status quo to protect the interest of all parties."  Finally, any TRO issued in this matter may affect Progressive's rights and arguments in its own matter.  Therefore, Progressive may be harmed if it is not allowed to intervene to protect its interests.[2]

WHEREFORE, Progressive respectfully requests that this Court grant Progressive's motion to intervene as a matter of right in this matter under RCFC 24(a). Progressive has a substantial, direct interest related to the subject matter of this action, and Progressive's interest may be impaired by the ultimate disposition.  Alternatively, if the Court decides any element of intervention as a matter of right has not been satisfied, Progressive respectfully requests that the Court grant this motion to intervene under RCFC 24(b).

Date:   April 28, 2017              Respectfully submitted,

**PROGRESSIVE FINANCIAL SERVICES, INC.**

By:     /s/ *Thomas A. Coulter*
        Thomas A. Coulter
        **LECLAIRRYAN, A Professional Corporation**
        919 East Main Street, Twenty Fourth Floor
        Richmond, Virginia  23219
        Telephone: (804) 916-7103
        Facsimile: (804) 916-7203
        Thomas.Coulter@leclairryan.com

*Counsel of Record for
Progressive Financial Services, Inc.*

---

[2] Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Progressive filed its Complaint in this Court on April 21, 2017, which sets forth the basis for Progressive's claim.  *See Progressive Financial Servs., Inc.*, No. 17-558.

OF COUNSEL:
Nicole Hardin Brakstad
**LECLAIRRYAN, A Professional Corporation**
919 East Main Street, Twenty Fourth Floor
Richmond, Virginia  23219
Telephone: (804) 783-7507
Facsimile: (804) 783-7607
Nicole.Brakstad@leclairryan.com

**CERTIFICATE OF FILING AND SERVICE**

I certify that on April 28, 2017 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel for all parties.

/s/ *Thomas A. Coulter*
Thomas A. Coulter
