# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
# BID PROTEST

| | |
|---|---|
| CONTINENTAL SERVICE GROUP, INC. and PIONEER CREDIT RECOVERY, INC.<br><br>       Plaintiffs,<br><br>  v.<br><br>THE UNITED STATES,<br><br>       Defendant,<br>and<br><br>THE CBE GROUP, INC.<br>PREMIERE CREDIT OF NORTH AMERICA, LLC<br>GC SERVICES LIMITED PARTNERSHIP<br>FINANCIAL MANAGEMENT SYSTEMS, INC.<br>VALUE RECOVERY HOLDINGS, LLC<br>and WINDHAM PROFESSIONALS, INC.<br><br>       Defendant-Intervenors. | No. 17-cv-449<br><br>Chief Judge Susan G. Braden |

**DEFENDANT-INTERVENORS' OPPOSITION TO THE DEPARTMENT OF JUSTICE'S REQUEST TO LIFT THE INJUNCTION AS TO SMALL BUSINESS CONTRACTORS ONLY**

On May 19, 2017, Defendant the United States ("DOJ") announced that the Department of Education ("ED") will take corrective action in response to the protests at the Court of Federal Claims and the March 27, 2017 decision by the Government Accountability Office ("GAO") by amending the solicitation, requesting revised proposals, and conducting a new evaluation. (Dkt. 122 at 1-2.) The corrective action, which will reopen the competition

and result in new proposals, a new evaluation and a new award decision, moots the current protests warranting their dismissal and the lifting of the current injunction. *Guardian Moving & Storage Co., Inc. v. United States*, 657 F. App'x 1018, 1025 (Fed. Cir. 2016) (recognizing that corrective action to seek revised proposals and reevaluate them, and issue a new award mooted the protest); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending ... that makes it impossible for the court to grant any effectual relief whatever ..., the [case] must be dismissed.").

ED's corrective action also makes clear that the contracts ED awarded under the solicitation in December 2016 are valid and, consistent with GAO's decision, ED will not terminate any of the current awardees unless they are no longer one of the most advantageous proposals following the reevaluation. (*Id*. at 9, 10-11.) Accordingly, to the extent ED requires services contemplated by Solicitation No. ED-FSA-16-R-0009 (the "2015 Solicitation") during the corrective action period, the awarded contracts remain the proper vehicle for such work rather than diverting that work to small businesses. Alternatively, the Court should amend the injunction to provide (as it previously recognized) that Premiere Credit of North America LLC ("Premiere"), the CBE Group ("CBE"), and Transworld Systems Inc. ("TSI") lawfully may retain and perform the in-repayment accounts they serviced under the 2009 Task Order contract during any corrective action period because such performance confers no competitive advantage nor does it harm any protester's interest. In fact, ED has agreed previously not to use the performance of the in-repayment accounts for purposes of determining account placements under the new contract.

Although the parties disagree regarding the propriety of GAO's decision, no dispute exists that GAO questioned the evaluation process under the Solicitation. Contrary to the

May 2 suggestion of several parties (and non-parties) and the DOJ's Motion to Vacate the Preliminary Injunction as to the small businesses only, GAO did *not* declare the December 2016 awards unlawful or require their termination. *Cf.* 31 U.S.C. § 3554 (providing GAO with plenary authority to recommended, among other relief direct termination of a contract, award of a contract, immediate recompetition, award consistent with statute or regulation, etc.) Rather, GAO specifically and knowingly left the awarded contracts in place and available to ED without restriction on their use, and recommended termination only if the reopened competition and reevaluation resulted in contrary findings:

> We recommend that the agency conduct and adequately document a new evaluation of proposals under the management approach and past performance factors including, as appropriate, amending the solicitation to reasonably reflect the agency's needs conducting discussions, and receiving revised proposals. After conducting its new evaluation, the agency should prepare and adequately document a new source selection decision. In the event that any of the current awardees are not evaluated as having a proposal among the most advantageous to the government, the agency should terminate any such awards for the government's convenience.

*General Revenue Corp.*, B-414220.2, *et al.*, Mar. 27, 2017, __ CPD ¶ ___ (sustaining certain particular protests in part). GAO's targeted recommendation is not surprising. Despite over twenty protesters represented by experienced protest counsel, thousands of briefing pages, and countless arguments, Premiere and most other awardees did <u>not</u> face a single adverse GAO finding and they hold very high evaluation ratings compared to the protester field.

As explained by DOJ and ED (principally through the declaration of Mr. Runcie, the Chief Operating Officer of the Federal Student Aid), there is a critical need for private collection agency services called for in the 2015 Solicitation. (Dkt 126-3 at ¶¶ 2-15.) As described by Mr. Runcie, "the Government has been seriously harmed and tens of thousands of students across the country have been denied critical services and significant benefits as a

3

result of the injunction. (*Id.* at ¶ 7.) In the past two months, 234,000 borrowers with accounts totally $4.6 billion have defaulted on their loans and are available for service. (*Id.* at ¶¶ 8-13.) Given the ED's critical need for the private collection agency services during a corrective action process, ED can and should obtain such services through the awardees. Any other result will harm the borrowers and the public fisc because the small business contractors cannot manage the workload on their own.

Significantly, where GAO leaves awarded contracts in place pending corrective action, the law presumes that the awardees will perform any necessary work during the corrective action. To borrow from this Court:

> Defendant's response, however, points out the indisputable: <u>neither GAO nor the agency actually voided the initial task order award. It therefore remained available, after the protest was dismissed and the stay lifted, to use as an interim vehicle for obtaining performance pending correction of the initial award.</u>
>
> \* \* \*
>
> <u>We are mindful that GAO has endorsed a practice of allowing an agency to proceed with an award on a temporary basis, pending corrective action.</u> In *Del–Jen Education & Training Group*, B-401787.3, 2010 WL 1782371, at \* 1 (Comp. Gen. May 4, 2010), the original awardee was permitted to continue performing the contract despite the agency's stated intent to take corrective action after a protest. Del–Jen filed a subsequent protest, complaining that the awardee gained an unfair competitive advantage and should thus be excluded from the subsequent corrective action competition. *Id.* GAO denied the protest, stating that "an agency generally may permit the original awardee to continue performance (after the lifting of any applicable stay) pending the implementation of corrective action undertaken in response to the protest." Id. at \*2. Despite a flawed procurement, the agency could continue the initial award and procure the goods or services in the interim while it conducted its corrective action. GAO also noted that continuing

4

> with award to the original awardee did not constitute a new award decision.
>
> Similarly, in *Cox & Associates CPAs, PC*, B-287272.3, 2001 WL 710130, at *2-3 (Comp. Gen. June 7, 2001), the protestor objected to proposed corrective action taken in an earlier protest, which was to cancel the solicitation and redo the procurement—a process the agency estimated would take a year; and it protested the decision of the agency to procure the services in the meantime from a different company via the GSA Federal Supply Schedule. GAO denied the protest, stating that, when the agency has immediate need of the services to be provided by the protested contract, it may procure them in the interim. *Id.* at *3.

*Solutions by Design Alliant Joint Venture, LLC v. United States*, 2013 WL 2457279 (2013) (emphasis added).

In *Del-Jen Education & Training Corp.*, B-401787.3, May 4, 2010, 2010 CPD ¶ 110, GAO made clear that no impropriety exists where an agency uses an awarded contract notwithstanding corrective action: "<u>Where, under circumstances such as those here, there is a need for continued performance under a protested contract, an agency generally may permit the original awardee to continue performance (after the lifting of any applicable stay) pending the implementation of corrective action undertaken in response to the protest.</u>" (Emphasis added).

Even more pointedly, in *Cox & Associates CPAs, PC*, B-287272.2, B-287272.3, June 7, 2001, 2001 CPD ¶ 102, GAO stated:

> We agree that the now canceled RFQ was defective. For that reason, we are unable to say that either SAIC or Cox would be entitled to an award under the solicitation. Nevertheless, it is not disputed that the Air Force needs to obtain continued performance of these services. <u>Ordinarily, in circumstances such as are presented here where there is a need for continuing services, our recommendation provides for the agency to</u>

> continue performance of an award made, even under a defective solicitation, pending the outcome of a new competition.

Permitting the awardees to perform is particularly important here because the small business contractors cannot successfully meet ED's needs on their own. ED's own statistics and past contracting efforts make clear that the small business contractors cannot manage ED's significant workload alone. *See e.g.*, Insidearm.com/documents/495/PCA_recoveries_chart_from_FSA.pdf (taking statistics from FSA's website to showing significantly lower recovery rates on defaulted loans since ED has begun pushing the services to only the small businesses), Ex. A; 2009 Task Order Contract PWS Section 1.4 at 42, Ex. B (contemplating three times as many accounts to large business (15,000) compared to small businesses (5,000)). When comparing quarter four of FY2016 to the same period in FY 2015, recoveries are $165.3 million lower. (Insidearm.com/documents/495/PCA_recoveries_chart_from_FSA.pdf, Ex. A.) A comparison of the first quarter of FY2017 to the same period in FY2016 shows a dramatic $308.1 million deficit in the recoveries. Thus, given the critical need for the services, the public and borrowers' interests in managing the student loan crisis are best served by allowing performance of the large business awardees.

None of the protesters will suffer harm much less irreparable harm as a result of performance by the current awardees to service ED's critical needs. The challenged procurement is not a services or supplies procurement with a single awardee where the absence of an injunction will result in a plaintiff losing its opportunity to perform or compete for an award upon a successful resolution of a protest. This is a multiple award IDIQ procurement that involves ED's continual need for services related to student loan defaults

and collections. Mr. Runcie's declaration makes clear that this critical need is growing and that there will be no shortage of defaulted student loan collection services in the foreseeable future. (Dkt. 126-3 at ¶¶ 2-15.) Under the 2015 Solicitation and related contracts, each successful offeror is entitled to only an initial transfer of accounts of approximately 5,000 to 15,000 accounts after ED authorizes the contractor to operate. (2015 Solicitation at 74, Dkt. ___ (Ex. B to Premiere Motion).) ED has the final determination on accounts and for the first several transfers it may level them across contractors. (*Id.*) Thus, to the extent any protesters are successful in the recompete, ED can catch them up through the "first several transfers." (*Id*.) Similarly, ED may transfer the accounts of any awardee that is subsequently deemed not one of the most advantageous . ED's procedures in this regard are the same as how accounts were transferred under the 2009 Task Order contracts. (2009 Task Order Contract Section 1.4 at 42, Ex. B.) In short, despite the Protesters' claims to the contrary, there is no competitive advantage to the current awardees performing. Thus, the balance of harms and public interest factors in the preliminary injunctive standard warrant a lifting of the injunction in total here.

Alternatively, at a minimum, the Court should lift the injunction only to permit Premiere, CBE, and TSI to perform their in-repayment accounts like ConServe and the small business contractors have been able to do throughout the injunction. As the Court recognized, PWS Section 4.4 in the 2009 Task Order Contracts provides that ED will not recall in-repayment accounts if the contractor has been awarded a subsequent ED collections Task Order or contract. (2009 Task Order Contract, PWS Section 4.4 at 55, Ex. B ("ED will conduct an orderly recall of all retained in repayment accounts upon the effective date of expiration of the Task Order unless the Contractor has been awarded a subsequent ED

7

collections Task Order or contract.").) Premiere, CBE, and TSI were all awarded valid follow-on contracts that remain viable. In fact, based on an earlier ruling of this Court which recognized the harm to borrowers, the contractors, and the public fisc, ED awarded each of those awardees a task order to service the in-repayment accounts. (*See e.g.*, Premiere Task Order award, Ex. C.) Nevertheless, after the May 2, 2017 hearing, the Court has enjoined Premiere, CBE and TSI from servicing these accounts to the detriment of the borrowers, the contractors, and the public fisc. (*See e.g.*, Declarations, Ex. D.) There is no legitimate basis to treat the in-repayment account held by Premiere, CBE, and TSI any different from those held by ConServe and the small business contractors – all of whom have been able to service their in-repayment borrowers during the injunction period. Servicing of these accounts will not confer any competitive advantage on Premiere, CBE, or TSI. These contractors have serviced these borrowers for years and under the 2009 Contracts have the right to continue to service them. There is no legitimate or legal need for ED to divert these in-repayment accounts to small businesses or any other contractor. Setting aside the unnecessary upheaval for hundreds of thousands of borrowers across the country, the specially-trained employees who do this work for Premiere, CBE, and TSI will have no work to do. (*See id.*) Thus, unlike the small business contractors and ConServe – all of whom have been serving their in-repayment accounts during the injunction, Premiere, CBE, and TSI will be forced to lay off workers who earn good wages, especially in Indiana, Iowa, Tennessee and Pennsylvania where CBE, Premiere and TSI employees work. (*See id*.) The loss of these valuable employees will also unduly harm Premiere, CBE, and TSI in the recompetition. (*See id.*) Thus, far from conferring any competitive advantage, the lifting of the injunction to at a

minimum the in-repayment accounts, will prevent irreparable competitive harm to Premiere, CBE, and TSI.

Accordingly, Defendant Intervenors respectfully request that the Court lift the injunction completely and hold that Defendant-Intervenors may perform during the corrective action period. Alternatively, Defendant Intervenors request that the Court at a minimum revise the injunction to permit Premiere, CBE, and TSI to perform their in-repayment accounts during the corrective action period, just as ConServe and the small businesses have been permitted to do throughout the protest proceedings.

Dated: May 22, 2017 				Respectfully submitted,

|  | Craig A. Holman<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>Craig.Holman@apks.com<br>*Counsel for Intervenor,*<br>*PREMIERE CREDIT OF NORTH AMERICA LLC*<br><br>Jeffery M. Chiow<br>ROGERS JOSEPH O'DONNELL, P.C.<br>jchiow@rjo.com<br>*Counsel for Intervenor, THE CBE GROUP* |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a copy of the foregoing Defendant-Intervenors' Opposition To The Department Of Justice's Request To Lift The Injunction For Small Business Contractors Only through the Court's Electronic Case Filing ("ECF") System, which will automatically send a copy to all parties.

Dated: May 22, 2017                      s/ Craig A. Holman
                                         Craig A. Holman