**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | | |
|---|---|---|---|
| **CONTINENTAL SERVICES GROUP, INC. and PIONEER CREDIT RECOVERY, INC.,** | ) ) ) ) | | |
| Plaintiffs, | ) ) | | |
| **PERFORMANT RECOVERY, INC., COLLECTION TECHNOLOGY, INC., ALLTRAN EDUCATION, INC., and PROGRESSIVE FINANCIAL, SERVICES, INC.,** | ) ) ) ) ) ) ) | Nos. | 17-449, 17-499, 17-493, 17-517, 17-578, 17-558, 17-633 Consolidated Chief Judge Braden |
| Intervenor-Plaintiffs, | ) ) | | |
| v. | ) ) | | |
| **UNITED STATES OF AMERICA,** | ) ) | | |
| Defendant, | ) ) | | |
| **CBE GROUP, INC., PREMIERE CREDIT OF NORTH AMERICA, LLC, GC SERVICES LTD. PARTNERSHIP, FINANCIAL MANAGEMENT SYSTEMS, INC, VALUE RECOVERY HOLDINGS, LLC, WINDHAM PROFESSIONALS, INC., and AUTOMATED COLLECTION SERVICES, INC.,** | ) ) ) ) ) ) ) ) ) | | |
| Intervenor-Defendants. | ) ) | | |

**PLAINTIFF PROGRESSIVE FINANCIAL SERVICES, INC.'S OBJECTION TO DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF "LIMITED" RECALL OF ACCOUNTS AND MOTION FOR EMERGENCY RELIEF**

Progressive seeks emergency relief and requests the Court's intervention and immediate action to prevent the U.S. Department of Education's calculated attempt to violate the Court's prior orders prohibiting the recall of Progressive's "in-repayment" accounts. On September 7,

2017, after normal business hours, Defendant United States of America (acting through the U.S. Department of Education, or "ED") filed a "Notice of Limited Recall of Accounts" (ECF 187) (the "Notice"), informing the Court that in approximately six hours from its filing, on **_Friday, September 8, 2017_**, it intended to begin the recall of "approximately 1,000" in-repayment accounts assigned to six Private Collection Agencies ("PCAs"): Collection Technology, Inc. ("CTi"), Transworld Systems, Inc., The CBE Group, Premiere Credit of North America, Alltran Education, Inc., and Plaintiff, Progressive Financial Services, Inc. ("Progressive"). (ECF 187 at 2.) ED did not provide a schedule or identify how many accounts it intends to recall from each PCA, but stated, without providing additional detail, that it "anticipates expanding the recall of accounts, as necessary. . . ." (*Id.* at 3.) ED claims that such a recall is "urgently needed in order to provide assistance to student borrowers who reside in hurricane disaster relief areas." (*Id.* at 2.)

I.   **ED's Proposed Recall Of Progressive's In-Repayment Accounts Violates The Temporary Restraining Orders and Preliminary Injunction**

In essence, ED's Notice is nothing more than a Notice to the Court that ED intends, as early as possible and without sufficient notice to interested parties, to violate the Court's temporary restraining orders ("TROs") and preliminary injunction ("PI") by transferring select "in-repayment" accounts to a third-party contractor, with more to come. Such action opens the door to the exact harm that Progressive sought to avoid by filing its protest and Motion for Temporary Restraining Order on April 21, 2017 and essentially moots Progressive's claim as to any of the in-repayment accounts identified in ED's Notice, which are currently assigned to Progressive and protected from recall by this Court's prior orders, and to any future in-repayment account identified by ED. Accordingly, Progressive objects to and opposes ED's proposed recall of in-repayment accounts, requests that the Court provide an expedited ruling

that ED's proposed recall violates the previous TROs and PI and is therefore prohibited, or, in the alternative, if ED is allowed to move forward with its proposed recall, require ED to provide assurances that it will treat all incumbent contractors fairly, and to make Progressive whole upon award by returning those accounts to Progressive.

Progressive is sympathetic to the plight of those affected by the recent catastrophic flooding caused by Hurricane Harvey, and shares ED's concerns about borrowers who reside in other geographic areas that may be affected by Hurricanes Irma and Jose. Progressive absolutely agrees that those borrowers should be afforded the same relief ED suggests in its Notice. But, per this Court's prior rulings, ED is not authorized to provide that relief by transferring those in-repayment accounts. Instead, if ED wants borrowers to have the opportunity for the relief cited in its Notice, it must authorize Progressive to act on its own "in-repayment" accounts so that Progressive can provide the same relief that ED proposes, thereby avoiding any impermissible recall and transfer to a third-party contractor. All ED has to do is provide a bridge contract to Progressive for the limited time period required to complete its corrective action.[1] However, Progressive is also adamant that ED's Notice is nothing more than an attempt to circumvent Progressive's protest under the guise of assisting borrowers and that, instead of any recall of accounts, such "urgent and compelling" circumstances justify the award of a bridge contract so that Progressive can service these accounts—just as it sought to do in April 2017, when it filed its original Complaint.

In its Notice, ED claims that it has not recalled the in-repayment accounts "[o]ut of respect for the Court's deliberative process", and claims, without support, that its intended action

---

[1] On August 24, 2017, ED notified the Court that its "evaluation teams have completed their review of all proposals" and that it was "working diligently to complete the corrective action," and that ED would file another status report on September 14, 2017 (in 6 days). (ECF 184 at 2.)

is "neither an assignment nor a transfer of PCA work to another contracting vehicle and is not inconsistent with the Court's temporary restraining orders or injunctions." (ECF 187 at 2-3.) Simply writing this, however, does not make it true. In fact, this is the same argument that ED made in its earlier Notice of Recall filed on April 18, 2017 (ECF 65 at 3.), which was soundly rejected by the Court's issuance of the TROs and PI. As this Court found in its Order granting preliminary injunction:

> [T]he court has determined that Plaintiffs and Intervenor-Plaintiffs will be immediately and irreparably injured, if the ED allows continued performance on Task Orders issued under Solicitation No. ED-FSA-16-R-0009, or otherwise transfers work to another contracting vehicle to circumvent or moot this bid protest.

(ECF 87 at 2.)

By its proposed recall, ED seeks to circumvent or moot Progressive's protest and irreparably harm Progressive. By recalling in-repayment accounts and transferring them to a third-party contractor, ED would deprive Progressive of an opportunity to fully perform a government contract and would diminish its future contract award. Progressive will lose accounts it would otherwise retain, due solely to ED's flawed procurement process and failure to postpone the recall of accounts as part of its corrective action. Moreover, any effort by ED to recall Progressive's accounts would be particularly unreasonable in light of ED's earlier agreement to stay any recall of accounts and the relatively short time period before the Agency claims it will complete its corrective action. Most significantly, given the nature of Progressive's protest, the gravamen of which is prevention of the recall of its accounts, if the Court were to allow such action, ED would have free rein to recall ***all of Progressive's accounts***, which would provide ED with the same result as it seeks through its Motion to Dismiss, but without having to prevail on the merits of that Motion. Moreover, if the Court allows ED to move forward with its

plan to recall accounts, and ED begins to transition accounts serviced by Progressive to a third-party contractor, then Progressive will have lost the opportunity to compete on an open and level playing field in any future procurement or reprocurement. Any future proposal will need to include the overhead costs to re-migrate accounts back (if that option is even made available to the Progressive—which ED has indicated is unlikely) thereby increasing the price to perform under any future award, placing it at a severe disadvantage by eliminating any advantage it would have as an incumbent.

The Court's TROs and PI enjoined ED from "transferring work to be performed under the contract at issue in this case to other contracting vehicles to circumvent or moot this bid protest . . .". (ECF. 9 at 3; ECF 33.) Any recall of Progressive's accounts would result in a transfer of accounts—the very action this Court has prohibited through its various TRO's and its May 2 PI. ED has previously suggested that any recall would simply allow ED's account administrator to continue to maintain the accounts and is not really a transfer of accounts. (*See* ECF 65 at 2.) Despite the Government's attempt to portray the recall of accounts as some benign act, the fact is that, by recalling the accounts, they are transferred, because they are no longer assigned to Progressive and Progressive has no assurance or expectation of ever recovering those recalled accounts, and, of course, the associated revenue generated by those accounts. If ED had conducted a proper procurement, Progressive would likely already have a follow-on contract award. And, having won its bid protest, with one of the highest overall ratings, among the original group of protesters, it is likely to win an award after ED completes its re-evaluation process. Particularly given that Progressive won its protest, it is unreasonable, arbitrary and capricious, and contrary to basic procurement laws and regulations like the Competition in Contracting Act, to allow ED to diminish Progressive's future contract award by recalling

accounts it would otherwise retain on its new contract, all because ED failed to conduct a proper procurement. That would, in effect, punish Progressive for ED's failure to timely award a new contract, and now, failing to complete its proposed corrective action in a timely manner. This Court has often prevented the Government from violating the automatic stay or simply ensured the status quo until a protest is resolved. That is all that Progressive seeks; that, as a winning protester, its rights are not injured while waiting for ED to correct its flawed procurement process. ED's proposed recall, to begin *__today__*, threatens to irreparably harm Progressive even further, and therefore Progressive prays that the Court grant its request for emergency relief.

II.  **"Unusual and Compelling" Circumstances Require Issuance Of A Bridge Contract To Progressive**

Based on ED's Notice, it is apparent that there is now, more than ever, authority for the issuance of short-term bridge contract to Progressive to service the in-repayment accounts until ED completes its corrective action. As it has repeatedly explained to ED, Progressive (along with CTi and Van Ru Credit Corp.) believes that there are a number of vehicles under the Federal Acquisition Regulation ("FAR") by which ED could issue bridge contracts to Progressive (and similarly situated incumbent contractors) during the pendency of the corrective action, including the following:

1. A "follow-on" contract under FAR 8.405-6;

2. A limited solicitation resulting in a General Services Administration Federal Supply Schedule task order under FAR 8.405-2; or

3. A sole source bridge contract under FAR Part 6 (citing "unusual and compelling urgency" under FAR 6.302-2, or citing "unusual and compelling urgency" or "public interest" under FAR 6.302-7").

(*See Progressive Financial Services, Inc. v. United States,* No. 17-558, ECF 55.). The award of a short-term bridge contract would be the more expedient and just response to the recent

catastrophic events caused by Hurricane Harvey, and would allow Progressive to prepare for and avoid future harms to borrowers in the path of Hurricanes Irma and potentially, Jose. Certainly, the extreme harms inflicted by Hurricane Harvey would satisfy the "unusual and compelling urgency" to justify a sole source contract, which ED claimed was previously lacking.

Therefore, Progressive requests that the Court grant its request for emergency relief, uphold its preliminary injunction, and issue an expedited ruling that ED's proposed recall of in-repayment accounts in geographic areas affected by the recent and potential hurricanes is inconsistent with, and would violate the terms of the TROs and PI, and that ED is, therefore, prohibited from engaging in any recall of in-repayment accounts as stated in its Notice. In the alternative, if ED is allowed to move forward with its proposed recall, Progressive requests that the Court require ED to provide assurances that it will make Progressive whole upon award by returning those accounts to Progressive and such other relief as the Court deems necessary.

Date:   September 8, 2017                Respectfully submitted,

**PROGRESSIVE FINANCIAL SERVICES, INC.**

By:   s/ *Thomas A. Coulter*
Thomas A. Coulter
**LECLAIRRYAN, A Professional Corporation**
919 East Main Street, Twenty Fourth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7103
Facsimile: (804) 916-7203
thomas.coulter@leclairryan.com

*Counsel of Record for*
*Progressive Financial Services, Inc.*

OF COUNSEL:
Nicole Hardin Brakstad
**LECLAIRRYAN, A Professional Corporation**
919 East Main Street, Twenty Fourth Floor
Richmond, Virginia  23219
Telephone: (804) 783-7507
Facsimile: (804) 783-7607
nicole.brakstad@leclairryan.com